IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | :    1:25CR142-1 |
| WILLIAM LAMAR RHEW, III | : |

The United States Attorney charges:

**General Allegations**

At all times relevant to this Information:

1. WILLIAM LAMAR RHEW, III was a resident of Guilford County, North Carolina, within the Middle District of North Carolina.

2. WILLIAM LAMAR RHEW, III incorporated Chadley Capital, LLC ("Chadley Capital") on September 18, 2017 in Delaware. Chadley Capital was not registered to do business in North Carolina through the North Carolina Secretary of State. Chadley Capital's address was the residential address of WILLIAM LAMAR RHEW, III.

3. WILLIAM LAMAR RHEW, III was the sole member and owner of Chadley Capital.

4. WILLIAM LAMAR RHEW, III incorporated Chadley Management Inc. ("Chadley Management") on December 19, 2018 in Delaware. It was registered on March 18, 2020 to do business in North Carolina through the

North Carolina Secretary of State. Chadley Management did business as Spartan Safe and sold security safes.

5. WILLIAM LAMAR RHEW, III was the President and Chief Executive Officer of Chadley Management.

6. WILLIAM LAMAR RHEW, III was the Managing Member of Grace McLain Capital Advisors, LLC ("Grace McLain") which was organized in North Carolina on April 18, 2013. Grace McLain was a shell company whose bank accounts WILLIAM LAMAR RHEW, III used as his personal accounts.

7. From in or about November 2017, continuing up to and including in or about December 2023, the exact dates unknown, in the Middle District of North Carolina, and elsewhere, WILLIAM LAMAR RHEW, III executed a scheme and artifice to defraud investors of at least $24 million by falsely representing, among other things, Chadley Capital's use of investment funds to purchase accounts receivable, revenue growth, and investors' consistent rates of return.

8. Throughout the duration of the scheme, WILLIAM LAMAR RHEW, III never used investors' funds to purchase accounts receivable and instead used the money for his personal enrichment and financial support of Chadley Management. WILLIAM LAMAR RHEW, III also used investors' funds to make payments in the manner of a "Ponzi" scheme. The term Ponzi

2

scheme generally refers to a fraud in which investor principal and interest payments are funded by new principal investments of others, rather than by a genuine return on principal investments.

## The Fraudulent Scheme

9. Beginning in or around November 2017 through at least December 2023, WILLIAM LAMAR RHEW, III raised over $24 million from approximately 117 investors ("Victim Investors").

10. As part of the scheme and artifice to defraud, WILLIAM LAMAR RHEW, III induced Victim Investors to invest in Chadley Capital under the false promise of high rates of return on investment, sometimes as high as 25%.

11. As part of the scheme and artifice to defraud, WILLIAM LAMAR RHEW, III also induced Victim Investors to invest in Chadley Capital by making, and causing to be made, materially false and fraudulent representations, and concealing, and causing to be concealed, material facts, and by telling deceptive half-truths, including the following:

    a. WILLIAM LAMAR RHEW, III falsely represented to Victim Investors that Chadley Capital had carved out a niche operation within the accounts receivable financing space and that Chadley Capital would use the Victim Investors' funds "to facilitate asset acquisition and comprehensive participation in the general fund of Chadley Capital,

3

LLC." This representation was fraudulent and misleading because Chadley Capital never operated in the accounts receivable financing space and never used Victim Investors' funds to acquire invoices or make any other investment. Instead, WILLIAM LAMAR RHEW, III used Victim Investors' funds for his own personal enrichment, the financing of Chadley Management, and payments to other Victim Investors.

    b. WILLIAM LAMAR RHEW, III falsely represented to Victim Investors that Chadley Capital had increased its factoring revenue from $100 million in 2019 to $300 million in 2022 and was able to provide its investors with consistent returns in excess of 20% per year. This representation was false because Chadley Capital had no factoring revenue and any returns that investors received were funded by new Victim Investors' funds.

    c. WILLIAM LAMAR RHEW, III emailed fraudulent wire confirmations to Victim Investors, including confirmations of wire repayments to investors knowing that there were insufficient funds for those repayments.

    d. WILLIAM LAMAR RHEW, III falsely told investors that Capital One National Association held senior debt in the amount of

4

$27,400,000. WILLIAM LAMAR RHEW, III made this false representation to buy more time on investor repayment.

    e.    WILLIAM LAMAR RHEW, III created and caused to be created false online investor statements purporting to show the status of the Victim Investors' investments.

    f.    WILLIAM LAMAR RHEW, III falsely represented to Victim Investors, for example, "As of December 9th [2022], ChadCap currently sits nearly **36%+** over our entire 2021 annual revenue! As I alluded to in my August update, we have seen increasing deal flow over the past few quarters and, fortunately, that has not slowed to date. The team has done a phenomenal job of tightening the underwriting standards during this time to ensure that we don't 'drown in opportunity.'" This representation was false because Chadley Capital was not involved in the accounts receivable market, had no other business deals, and had no team involved in underwriting standards.

    g.    WILLIAM LAMAR RHEW, III falsely represented to Victim Investors, for example, on May 22, 2023, "I wanted to provide a brief update on our latest initiative. As many of you know, we've revitalized a vertical that I personally led back in 2020 in which we were buying blocks of receivables based credit facilities directly from banks. In this

scenario, we will buy a large block (or pool) of these facilities directly from banks and continue to service those traditional factoring lines. Nothing terribly interesting in that, however, it's the opportunities presented within those new relationships that are the most attractive." This representation was false because Chadley Capital never purchased accounts receivables from businesses or from banks and never serviced any factoring lines.

12. As part of the scheme and artifice to defraud, WILLIAM LAMAR RHEW, III used money from Victim Investors to make Ponzi-like payments. For example, on or about March 31, 2023, WILLIAM LAMAR RHEW, III received $100,000 from one Victim Investor for investment into Chadley Capital. Then, between on or about March 31, 2023 and April 3, 2023, WILLIAM LAMAR RHEW, III made payments to five other Victim Investors that he otherwise would not have been able to make but for the March 31, 2023 principal payment.

13. As part of the scheme and artifice to defraud, WILLIAM LAMAR RHEW, III used money from Victim Investors to make various personal expenditures, including purchasing a boat, a beach house, and luxury vehicles and making payments on personal credit cards for air travel, vacations, and other charges.

6

a. For example, on or about September 23, 2020, WILLIAM LAMAR RHEW, III received $119,750 from one Victim Investor for investment into Chadley Capital. On or about September 28, 2020, WILLIAM LAMAR RHEW, III used $30,000 of those funds towards the purchase of a new boat.

b. At other times, investor funds bypassed Chadley Capital altogether. For example, on or about September 7, 2022, WILLIAM LAMAR RHEW, III received a $15,000 cashier's check made payable to Chadley Capital from one Victim Investor and deposited it into Grace McLain's Truist bank account which served as WILLIAM LAMAR RHEW, III's personal account. WILLIAM LAMAR RHEW, III then used that money towards American Express charges for $10,606 in golf expenses, $6,632 at a restaurant, $2,172 at Airbnb, and $1,812 in air travel for four.

14. WILLIAM LAMAR RHEW, III did not disclose to Victim Investors the Ponzi-like nature of his scheme, namely that Chadley Capital did not have investments to pay the promised rates of return and instead WILLIAM LAMAR RHEW, III used new investor principal to make it appear that investments were realizing returns as promised. To continue to perpetuate the scheme, WILLIAM LAMAR RHEW, III convinced, or attempted to convince,

7

investors to re-invest their returns, keep capital invested, or make additional investments.

15. Because of WILLIAM LAMAR RHEW, III's material misstatements and omissions concerning Chadley Capital and its investment portfolio and WILLIAM LAMAR RHEW, III's promotion of false rates of return on those accounts receivables investments, and because of WILLIAM LAMAR RHEW, III's deceptive and misleading acts, Victim Investors lost money by investing in Chadley Capital. In total, WILLIAM LAMAR RHEW, III stole over $12 million from Victim Investors.

16. By soliciting investments in Chadley Capital, WILLIAM LAMAR RHEW, III created investment contracts, entitled Subordinate Notes, with investors that constitute securities.

## Count One
### (Wire Fraud)

1. Paragraphs 1 through 16 are incorporated by reference as if fully set forth herein.

2. On or about March 31, 2023, in the Middle District of North Carolina, and elsewhere, WILLIAM LAMAR RHEW, III, having knowingly devised and intended to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses,

8

representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit: a wire transfer in the amount of approximately $100,000 from a victim, K.W., to the Chadley Capital account at First Horizon ending in x3000; in violation of Title 18, United States Code, Section 1343.

## Count Two
### (Money Laundering)

1. Paragraphs 1 through 16 are incorporated by reference as if fully set forth herein.

2. From on or about March 31, 2023 to on or about April 3, 2023, in the Middle District of North Carolina, and elsewhere, WILLIAM LAMAR RHEW, III did knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, wire fraud in violation of Title 18, United States Code, Section 1343, with the intent to promote the carrying on of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of

9

some form of unlawful activity; in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).

## Count Three
### (Securities Fraud)

1. Paragraphs 1 through 16 are incorporated by reference as if fully set forth herein.

2. From in or about November 2017 to in or about December 2023, in the Middle District of North Carolina, and elsewhere, WILLIAM LAMAR RHEW, III willfully, directly and indirectly, by use of means and instrumentalities of interstate commerce and mails, used and employed manipulative and deceptive devices and contrivances by (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would and did operate as a fraud and deceit upon investors and others, in connection with the sale of securities, to wit: investments in Chadley Capital.

All in violation of Title 15, United States Code, Section 78j(b) and 78ff; and Title 17, Code of Federal Regulations, Section 240.10b-5.

10

## Count Four
## (Tax Evasion)

1.  Paragraphs 1 through 16 are incorporated by reference as if fully set forth herein.

2.  From in or about September 2020 through in or about October 2020, in the Middle District of North Carolina and elsewhere, WILLIAM LAMAR RHEW, III, willfully attempted to evade and defeat income tax due and owing by him to the United States of America, for the calendar year 2019, by committing the following affirmative acts, among others:

    a.  preparing and causing to be prepared, and signing and causing to be signed, a false and fraudulent Individual Income Tax Return, Form 1040 which was submitted to the Internal Revenue Service;

    b.  maintaining Grace McLain as a shell entity funded by Chadley Capital for WILLIAM LAMAR RHEW, III's personal benefit;

    c.  falsely reporting WILLIAM LAMAR RHEW, III's personal expenditures from Chadley Capital's accounts as business expenses of Chadley Capital;

      d.    falsely reporting funds transferred from Chadley Capital to Grace McLain as business expenses of Chadley Capital;

      e.    falsely reporting no income for Grace McLain;

      f.    falsely reporting Chadley Capital's net income; and

      g.    falsely reporting WILLIAM LAMAR RHEW, III's gross income.

In fact, WILLIAM LAMAR RHEW, III knew his taxable income for the calendar year was greater than the amount reported on the tax return, and as a result of such additional taxable income, there was substantial additional tax due and owing to the Unites States; in violation of Title 26, United States Code, Section 7201.

## Count Five
### (Willful Failure to File Tax Return)

1. Paragraphs 1 through 16 are incorporated by reference as if fully set forth herein.

2. During the calendar year 2022, WILLIAM LAMAR RHEW, III, a resident of Guilford County, North Carolina, had and received gross income of approximately $3,844,464 and by reason of such gross income was required by law, following the close of the calendar year 2022 and on or before April 18, 2023, to make an income tax return to any proper officer of the Internal

12

Case 1:25-cr-00142-UA     Document 1     Filed 04/22/25     Page 12 of 13

Revenue Service, stating specifically the items of his gross income and any deductions and credits to which he was entitled; well knowing and believing the foregoing, WILLIAM LAMAR RHEW, III, did willfully fail to timely make an income tax return; in violation of Title 26, United States Code, Section 7203.

DATED: April 22, 2025.

RANDALL S. GALYON
Acting United States Attorney

*Laura J. Dildine*
BY: LAURA J. DILDINE
Assistant United States Attorney